UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANK C. ROBERTO,

               Plaintiff,

              **Hon. Hugh B. Scott**

       v.               06CV484E

              **Report
and
Recommendation**

MICHAEL J. ASTRUE Commissioner of
Social Security[1],

               Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 9 (defendant Commissioner), 11 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND[2]

The plaintiff, Frank C. Roberto ("Roberto" or "plaintiff"), filed applications for disability

insurance benefits on May 21, 2002 (for disability benefits), and May 30, 2003 (for supplemental

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for now former Commissioner Jo Anne B. Barnhart as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

security income).  Administrative Law Judge Marilyn D. Zahm ("ALJ") noted that plaintiff, on

July 25, 2000, filed a joint disability and supplemental security income application (R. 24).  That

earlier application was denied initially and on  reconsideration.  On the present application,

plaintiff appeared before ALJ Zahm, who considered the case de novo and concluded, in a

written decision dated September 24, 2004, that plaintiff was not disabled within the meaning of

the Social Security Act.  The ALJ's decision became the final decision of the Commissioner on

June 24, 2006, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on July 20, 2006 (Docket No. 1).  The parties moved for

judgment on the pleadings (Docket Nos. 9, 11.  The motions were argued and submitted on May

23, 2007 (Docket Nos. 14, 15).

## FACTUAL BACKGROUND

Plaintiff was born April 20, 1954, and was fifty years old when the ALJ rendered her

decision in 2004 (R. 24, 36).  Plaintiff has a limited tenth grade education, attending a special

ungraded class (R. 24).  He worked previously as an assembler, performing medium, semi-skilled

work; a warehouse worker, performing medium, unskilled work; a laborer performing grinding

and polishing work, determined to be medium, unskilled work (R. 24).  He alleges disability

from impaired intellectual functioning, a hearing impairment, seizure disorder, and back

impairment (R. 24).

Plaintiff received Social Security benefits from October 1976 for grand mal epilepsy,

petit mal epilepsy, and chronic ear disease.  Plaintiff, however, had excessive income in

November 1997 and received overpayment until December 1998.  Meanwhile, plaintiff worked

from 1995.

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff submitted records from 1969, when plaintiff was 15 years old, from his school noting that he had behavioral problems there.  The assistant principal who wrote the letter referenced by the ALJ noted that plaintiff was "mentally retarded," but there were no records indicating an official designation of that status (R. 26).  Plaintiff's I.Q. was tested in September 2000 and he had a score of 72 for verbal I.Q., 70 for performance I.Q., and a full scale I.Q. of 69.  Plaintiff's reading level was at the third grade.  (R. 26.)

The ALJ found that plaintiff's impairment did not meet that stated in the regulations describing mental retardation (R. 28; see Docket No. 10, Def. Memo. at 9), that is, he did not meet the regulations' threshold definition for mental retardation (R. 28; Docket No. 10, Def. Memo. at 9, 12).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

3

or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental

impairment or impairments are of such severity that [he or she] is not only unable to do [his or

her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ."

42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from

returning to his previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.

1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the

existence of alternative substantial gainful work which exists in the national economy and which

the plaintiff could perform."  Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir.

1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must

employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant
> regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing
> his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any
> kind of work.

20 C.F.R. §§ 404.1520 & 416.920; <u>Berry</u>, <u>supra</u>, 675 F.2d at 467.  If a plaintiff is found to be

either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir.

1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.  <u>Gold v. Secretary</u>, 463 F.2d 38, 43 (2d Cir. 1972).

 In order to determine whether an admitted impairment prevents a claimant from

performing his past work, the ALJ is required to review the plaintiff's residual functional capacity

and the physical and mental demands of the work he has done in the past.  20 C.F.R.

§§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a  precise description of the particular job duties which are likely to

produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments,

working with other people, etc., in order to determine if the claimant's mental impairment is

compatible with the performance of such work."  <u>See</u> Social Security Ruling 82-62 (1982);

<u>Washington v. Shalala</u>, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the

individual's ability to return to his past relevant work given his residual functional  capacity.

<u>Washington</u>, <u>supra</u>, 37 F.3d at 1442.

 For a claimed impairment of mental retardation, 20 C.F.R. pt. 404, subpt. P, Appx. 1,

§ 12.05, the claimant needs to meet the regulatory definition of Listing 12.05 and any of four sets

of criteria (combination of I.Q. score and indication of limitation of function), 20 C.F.R. pt. 404,

subpt. P, Appx. 1, § 12.00A.  Mental retardation refers "to significantly subaverage general

intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period, <u>i.e.</u>, the evidence demonstrates or supports onset of the impairment before

5

age 22," id. § 12.05.  The first two factors, if met, would be deemed severe enough to prevent the

claimant from doing any gainful activity without additional assessment, id. § 12.00, and that the

claimant has the mental incapacity evidenced by dependence upon others for personal needs or a

valid verbal, performance, or full I.Q. of 59 or less, id. § 12.05(A), (B).  For requirement C, a

valid I.Q. score of 60 through 70 and a physical or other mental impairment imposing an

additional or significant work-related limitation of function, id. § 12.05(C), the Social Security

Administration would assess the degree of functional limitation to determine if the retardation is

a "severe" impairment, id. § 12.00, while requirement D lists certain limitations as well as

scoring an I.Q. between 60 and 70, id. § 12.05(D).

*Application*

     Hence, plaintiff needs to show that his I.Q. was at the requisite level and another physical

or mental impairment to establish mental retardation under the regulation, id. § 12.05(C) (see

Docket No. 11, Pl. Memo. at 14, 15).  Plaintiff contends that he has the requisite score and

physical impairments to be considered mentally retarded under the Social Security regulations.

I.       Plaintiff's I.Q.

     In the instant case, plaintiff contends that his I.Q. score below 71 satisfies the

requirements for section 12.05 of the Listing of Impairments, 20 C.F.R. part 404, subpt. P,

Appx. 1 (Docket No. 11, Pl. Memo. of Law at 5-6).

     Psychologists who have evaluated plaintiff have found him to be borderline mentally

retarded (see R. 26-29, summarizing evaluations).  The Commissioner notes that one state

agency psychologist, Dr. Madan Mohan, stated that plaintiff's I.Q. scores may have

underestimated plaintiff's intellectual capacity (R. 505, 506, 27; Docket No. 10, Def. Memo. at

6

10; Docket No. 13, Def. Reply Memo. at 1).  The Commissioner argues that "borderline range of

intellectual functioning" is the I.Q. score range of 71 to 84, while mental retardation is 70 or

below, <u>Alvardo v. Barnhart</u>, 432 F. Supp. 2d 312, 316 (W.D.N.Y. 2006) (Larimer, J.) (citation

omitted) (Docket No. 13, Def. Reply Memo. at 2).  Plaintiff's I.Q. scores from 2000 were 69

overall, 72 verbal, and 70 for performance (R. 26, 404), whereas Dr. Thomas Dickinson[3] (who

conducted the I.Q. examination) in 2002 found that plaintiff's cognitive functioning was low

average to dull normal range (R. 26, 27, 28, 29, 479).  The ALJ disputed Dr. Dickinson's finding

here because there was no medical record to substantiate it, in part because Dr. Dickinson had

not conducted a second I.Q. test in 2002 (R. 29).  The Commissioner emphasizes that Dr.

Dickinson, and another psychologist, Dr. Thomas Ryan, found that plaintiff only had a borderline

intellectual functioning that the Commissioner concludes is not mental retardation (Docket No.

13, Def. Reply Memo. at 2; R. 404, 572), although Dr. Ryan examined plaintiff and found that

his nonverbal intelligence test scored a 10, equivalent to an I.Q. score of 70 (R. 571).

II.     Plaintiff's Adaptive Functioning

        A.      Adaptive Functioning

        Next, plaintiff claims that he suffers from deficits in adaptive behavior manifested during

the development period (before age 22), that his functions at a low third grade level and never

went beyond the tenth grade (Docket No. 11, Pl. Memo. at 7-9), hence meeting the threshold

definition for the mental retardation regulations, <u>see</u> 20 C.F.R. part 404, subpt. P, Appx. 1,

§§ 12.05, 12.00.  Plaintiff faults the ALJ's narrow construction of "adaptive functioning" by not

considering fully plaintiff's severely impaired academic functioning (low third-grade level of

---

[3]Also spelled "Dickenson" in the record, R. 404, 28.

functioning, not going beyond the tenth grade) as indicative of limitations on his adaptive functioning (id. at 8-9).  He then reviews several areas of adaptive functioning where he claims limitations (id. at 8-14).  He criticizes the ALJ for finding that plaintiff had no impairment from his ability to obtain work, while not noting plaintiff's ability to sustain employment.  Plaintiff then surveyed the record for the duration of his past employment, concluding that he did not hold any given job for more than six months, thus he did not engage in substantial gainful activity, see Gatliff v. Comm'r, 172 F.3d 609 (9th Cir. 1999).  (Id. at 9-10.)  Plaintiff argues that short-term employment should not be the measure whether an individual could perform work (id. at 10-11). He points to his social skills–having few friends, the ALJ recognizing that he can work only with minimal social interaction–as another adaptive functioning area in which he has limitations (id. at 12).  Another area where plaintiff claims to have adaptive functioning issues is his bill paying (id.).

The Commissioner argues that plaintiff and his wife testified to his ability to read basic materials, complete simple job applications (Docket No. 13, Def. Reply Memo. at 3).  He points out that Dr. Dickinson recommended placement of plaintiff in a vocational rehabilitation program for job counseling and training and that Dr. Mohan found that plaintiff could perform simple work-related mental activities, follow simple directions, and maintain focus on simple tasks (id.).  As for plaintiff's social skills, the Commissioner points to plaintiff's marriage of thirteen years belying plaintiff's antisocial claims (id. at 4).  The Commissioner also argues that the state agency consultants who have evaluated plaintiff found that he was able to care for himself, that he was independent in his activities of daily living (R. 447, 429; Docket No. 10,

Def. Memo. at 11-12).  The Commissioner also disputes whether plaintiff established that he had deficits that manifested prior to turning twenty-two years of age (id. at 6).

The consensus among the psychologists who evaluated plaintiff is that he is borderline to mildly mentally retarded (see, e.g., R. 430, Dr. Morris Newman's finding).  The definition under the Social Security regulations call for "significantly subaverage general intellectual functioning with deficits in adaptive functioning," 20 C.F.R. pt. 404, subpt. P, Appx. 1, § 12.05, and even the clinical definition for mental retardation refers to "significantly subaverage general intellectual functioning," (see Docket No. 11, Pl. Memo. at 8, quoting DSM IV; see also id., quoting American Association on Mental Retardation, Mental Retardation: Definition, Classification, and Systems of Support 19 (10th ed. 2002) ("significant limitations")).  The record before the ALJ does not show significant subaverage intellectual functioning.  Therefore, the ALJ's finding that plaintiff did not meet the threshold portion of the regulatory definition should be upheld.

B.     Required Diagnosis

Plaintiff next disputes the apparent requirement by the ALJ that there be a formal diagnosis of mental retardation to qualify for benefits (Docket No. 11, Pl. Memo. at 14-15), see Maresh v. Barnhart, 438 F. 3d 879, 899 (8th Cir. 2006).  Since the ALJ found that plaintiff has a severe hearing impairment and seizure disorder (R. 37, 30), he met the impairment prong for the mental retardation listing (Docket No. 11, Pl. Memo. at 15).  Plaintiff concludes that the record is complete and this matter need only be remanded for calculation of benefits (id. at 15-16).

The Commissioner argues that plaintiff did not meet the regulatory requirements to show his mental retardation under Listing § 12.05, that is significantly subaverage intelligence and concurrent deficits in adaptive functioning (Docket No. 13, Def. Memo. at 6).  The

9

Commissioner does not cite authority (either in this Circuit or elsewhere) requiring a diagnosis of mental retardation to support an application for benefits for that condition.

Given the finding that the ALJ was correct to find that plaintiff did not meet the threshold for mental retardation under Social Security regulations, the Court need not determine whether the ALJ was also correct in requiring as proof for that threshold definition that plaintiff has a medical diagnosis of mental retardation.  But, reviewing the psychologists evaluations, some did not evaluate plaintiff under Listing 12.05 for mental retardation although finding that he was borderline to mildly retarded (e.g., R. 429, 430, Dr. Newman making findings under Listing 12.02 for organic mental disorders and not under Listing 12.05).

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**.  Defendant's motion for judgment on the pleadings (Docket No. 9) should be **granted** and plaintiff's motion for similar relief in her favor (Docket No. 11) should be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any</u>**

**subsequent district court's order adopting the recommendations contained herein.** Thomas
v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995);
Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case
law and/or evidentiary material which could have been, but was not, presented to the Magistrate
Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale
Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3),
"written objections shall specifically identify the portions of the proposed findings and
recommendations to which objection is made and the basis for such objection and shall be
supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may
result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
July 20, 2007

11